■ In the Matter of PAUL C. MAGGIO, Appellant, v ROBERT P. WHALEN, as Commissioner of New York State Department of Health, et al., Respondent. — In a proceeding pursuant to CPLR article 78 to (1) review a determination of the respondent New York State Commissioner of Health, which retroactively revised the petitioner's Medicaid reimbursement rates for the period of June 1, 1976 through March 31, 1977, and imposed a 2% penalty for petitioner's late filing of his 1975 cost report, (2) permanently prohibit the respondents from seeking recoupment of the difference between the reimbursement payments originally certified and approved, and the rates as retroactively reduced, or (3) in the alternative, remit the matter to the respondent Commissioner of Health for a hearing on the propriety of the rate reduction, petitioner appeals from a judgment of the Supreme Court, Suffolk County (Bracken, J.), dated January 26, 1981, which, *inter alia,* sustained the determination for the period from October 1, 1976 through March 31, 1977. Judgment reversed, on the law, without costs or disbursements, and petition granted to the extent that the determination of the Commissioner of Health is annulled, and the matter is remitted to the Commissioner of Health for a hearing in accordance herewith. The petitioner is the owner and administrator of the Patchogue Nursing Center, a residential health care facility which received reimbursements from the respondent Suffolk County Department of Social Services under the terms of article 28 of the Public Health Law and regulations promulgated thereunder by the respondent New York State Commissioner of Health, in compensation for the treatment of patients eligible for Medicaid benefits. All such facilities are required to file annual financial reports on a calendar-year basis within 120 days after the end of the subject fiscal year (Public Health Law, § 2805-e). The relevant regulations, set forth in 10 NYCRR 86-2.2 provide, in pertinent part: "86-2.2 Financial and statistical data required. (a) Each residential health care facility shall complete and file, with the New York State Department of Health and/or its agent, annual financial and statistical report forms supplied by the department and/or its agent. Residential health care facilities certified for title XVIII of the Federal Social Security Act (Medicare) shall use the same fiscal year for title XIX of the Federal Social Security Act (Medicaid) as is used for title XVIII. All residential health care facilities must report their operations from January 1, 1977 forward on a calendar-year basis. (b) Federal regulations require the submission of cost reports to the State agency no later than three months after the close of the cost reporting year. State agencies requiring certified reports may grant an extension of 30 days. Since the reports from all residential health care facilities are required to be certified, an extension of 30 days is automatically provided in this subdivision so that all required financial and statistical reports shall be submitted to the department no later than 120 days following the close of the fiscal period. Further extensions of time for filing reports may be granted upon application received prior to the due date of the report and only in those circumstances where the residential health care facility established, by documentary evidence, that the report cannot be filed by the due date for reasons beyond the control of the facility. (c) In the event a residential health care facility fails to file the required financial and statistical reports on or before the due dates, or as the same may be extended pursuant to subdivision (b) of this section, the State Commissioner of Health shall reduce the current rate by two percent for a period beginning on the first day of the calendar month following the original due date of the required reports and continuing until the last day of the calendar month in which said required reports are filed." These regulations

were promulgated and became effective on September 30, 1976. The petitioner was required to file its 1975 financial report by April 30, 1976. On April 29, 1976, the petitioner requested a 15-day extension of the filing date, stating that he needed more time to familiarize himself with the new reporting format. The New York State Department of Health granted petitioner an extension to May 15, 1976. On May 17, 1976, the petitioner requested an additional 15-day extension, stating that his completion of the report had been interrupted by several governmental audits. The New York State Department of Health granted the petitioner an extension to May 31, 1976, but stated that, because of the current situation and pressure to develop 1977 reimbursement rates using a new methodology, no further extensions could be granted, and reports received after that date would be considered late and subject to penalties. On June 1, 1976, the petitioner requested yet another 15-day extension, stating that he had been prevented from completing his report by further governmental audits. The request was denied for the reasons stated above. The petitioner apparently submitted his 1975 report on March 31, 1977, or shortly thereafter. On June 15, 1977, the New York State Department of Health notified the petitioner that pursuant to 10 NYCRR 86-2.2 (c) a 2% penalty had been deducted from his Medicaid reimbursement rates for the period from June 1, 1976 to March 31, 1977, the period during which his report had been overdue. On December 16, 1977, the petitioner demanded a hearing on the issue of the penalty, on the ground, *inter alia,* that the respondent Suffolk County Department of Social Services was attempting to recoup the amounts in question. On January 25, 1978, the petitioner repeated his demand for a hearing. In a letter dated February 28, 1978, the petitioner was notified that the rate review board had confirmed the imposition of the penalty upon him. The petitioner thereafter commenced the instant proceeding. Special Term granted the petition in part, holding that 10 NYCRR 86-2.2 (c) could not be applied retroactively before September 30, 1976, the date on which it was promulgated, and modified the determination to reflect October 1, 1976, as the commencement date of the rate reduction. However, it denied the petition in all other respects, holding that the respondent Commissioner of Health was not required to hold a hearing regarding the petitioner's claim that he was prevented from timely filing his report "for reasons beyond [his] control" (10 NYCRR 86-2.2 [b]), and further, that the imposition of the penalty was valid and proper. We believe that Special Term erred in holding that the respondent Commissioner of Health was not required to hold a hearing regarding any of the issues raised by the petitioner. Section 206 (subd 4, par [c]) of the Public Health Law states: "4. The commissioner may: (c) assess any penalty prescribed for a violation of or a failure to comply with any term or provision of this chapter or of any lawful notice, order or regulation pursuant thereto, not exceeding one thousand dollars for every such violation or failure, which penalty may be assessed after a hearing or an opportunity to be heard." The petitioner herein twice requested a hearing. Instead, he received a review based only on the papers in the respondents' file, including the correspondence summarized herein. His appeal was denied. In failing to grant the petitioner's requests for a hearing, or even afford him an opportunity to have one as part of agency procedures, respondent Commissioner of Health failed to comply with the statutory mandate in section 206 (subd 4, par [c]) of the Public Health Law. In view of this clear statutory requirement, we find it unnecessary to reach the petitioner's due process contentions. We, therefore, remit the matter to the respondent commissioner for a hearing on petitioner's contentions. Gibbons, J. P., O'Connor, Weinstein and Brown, JJ., concur.